# IN THE COURT OF APPEALS OF IOWA

No. 14-0288
Filed June 25, 2014

**IN THE INTEREST OF J.C.,**
**Minor Child,**

**D.C.,**
Appellant.

_____

Appeal from the Iowa District Court for Polk County, Constance Cohen, Associate Juvenile Judge.


A father appeals his dismissal from a child-in-need-of-assistance proceeding. **REVERSED AND REMANDED.**


Colin R. McCormack of Van Cleaf & McCormack Law Firm, L.L.P., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, John Sarcone, County Attorney, and Stephanie E. Brown, Assistant County Attorney, for appellee.

Amanda M. DeMichelis, Chariton, for mother.

Michael Bandstra of Bandstra Law Office, Des Moines, attorney and guardian ad litem for minor child.


Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**MCDONALD, J.**

Dan is the legal-but-not-biological father of J.C. On February 27, 2014, the juvenile court dismissed Dan as a party in a child-in-need-of-assistance ("CINA") proceeding involving J.C. on the ground Dan had no right to participate in the proceeding. Although the order dismissing Dan from the proceeding appears to be a final order with respect to Dan, he filed an application for interlocutory appeal. The supreme court, assuming without deciding the order was interlocutory, granted the application, stayed the February order, and transferred the appeal to this court.

I.

In 2010, Khrista, the mother, was sentenced to a term of imprisonment. During Khrista's initial medical examination upon being committed to the custody of the Iowa Department of Corrections, it was determined she was pregnant. Subsequent to learning she was pregnant, but prior to the child's birth, Khrista and Dan married. The child born to the marriage was J.C. Khrista and Dan both knew Dan was not the biological father of J.C. because the parties had not had sexual relations prior to marriage. Nonetheless, Dan was identified on the birth certificate as J.C.'s father. Dan had custody of and cared for J.C. while Khrista was in prison.

On May 13, 2013, Khrista was released from prison. She and Dan resided together for a brief period of time and co-parented J.C. On June 25, 2013, Dan filed for dissolution of marriage after Khrista left the marital home with the child. Dan had court-ordered visitation.

The child came to the attention of the Iowa Department of Human Services ("IDHS") in November 2013 after Khrista was stopped by the police and found to be in possession of methamphetamine and related items while J.C. was in her care. The child was removed from Khrista on November 5 and placed with Dan. The State filed a CINA petition on November 7, 2013, identifying Dan as the legal father. The petition also identified another man—Robert—as the biological father of J.C. Later in the month, J.C. was removed from Dan and ultimately placed with J.C.'s maternal grandparents after Dan and J.C. both tested positive for methamphetamine. J.C. was adjudicated in need of assistance on December 19. In the adjudication order, Dan was identified as the legal father. At all times prior to his dismissal from the case, Dan was a party to and participated in the CINA proceeding and received services from IDHS.

On January 17, 2014, the State filed a petition to terminate the parental rights of Khrista and the putative biological father, Robert. The petition was filed in a case separate from the CINA proceeding involving Dan. On February 7, 2014, J.C.'s guardian ad litem filed a motion in both cases to determine paternity, requested the juvenile court find Robert to be the biological father of J.C., and requested Dan be dismissed from the proceedings. DNA testing established Robert was in fact the biological father of J.C. The juvenile court granted the guardian ad litem's motion and found Robert was the father of J.C. On February 27, the juvenile court then dismissed Dan from the proceedings, stating:

> When J.C. came to the attention of Juvenile Court on November 14, 2013, District Court proceedings came to an instant halt by operation of law. Once a Child in Need of Assistance action is initiated under Chapter 232, Juvenile Court exercises exclusive

jurisdiction over all matters involving custody, guardianship or placement of a child unless and until concurrent jurisdiction is granted. Parties are estopped from litigating these matters without the authorization of the Juvenile Court. Iowa Code Sections 232.61 and 232.3 (2013). The Juvenile Court has not granted concurrent jurisdiction in the instant case.

Because the Juvenile Court has exclusive jurisdiction of these proceedings, Juvenile Court statutes apply. To contend that this Court should apply other rules, definitions, and standards would defeat the fundamental purpose of Juvenile Court and the legislative plan to avoid the confusion of competing orders. To apply the policies, definitions, and standards of Chapter 598 to Chapter 232 cases is improper.

There is good reason for carving out distinct guidance for various matters. Differing goals demand different rules. Examples of diverse requirements and definitions in our Code of Iowa abound. For instance: the standard of proof in Chapter 232 cases is, in nearly all respects, clear and convincing evidence; in Chapter 598, the prevailing standard of proof is preponderance of evidence. Another example: the definition of a child for purposes of Chapter 232 is a person under the age of eighteen. Iowa Code Section 232.2(5); under Iowa Code Section 702.5, a child is defined as a person under the age of fourteen.

There is welcome wisdom in the simplicity of unambiguous and predictable structure in the law. Definitions as promulgated in Chapter 232 are an example of this wisdom. Iowa Code Section 232.2(3) clearly defines "parent" as a biological or adoptive mother or father of a child . . . ." Dan [ ] is none of these. Nor is he a necessary party. Iowa Code Section 232.91 includes only parents, guardians, custodians and guardians ad litem as necessary parties. Dan [ ] is none of these.

Although Dan [ ] is listed in the original petition as the legal father, and was, at the beginning of the case, the child's custodian (from whom the Court removed [J.C.] due to methamphetamine use), neither former role qualifies him as a necessary party. Again, there is wisdom in this scheme. It is good policy to narrow the number of necessary parties to avoid superfluous litigation that will bog down timely decision making for children in need of assistance and distract the Court from the core issue of the child's best interest. Parties are routinely excluded from child welfare cases. For example, CINA Petitions often name putative fathers who are excluded as parents after they undergo paternity testing. These individuals are subsequently excluded as parties even though they were named in the Petition.

Although [Dan] may continue to be the "legal father" for purposes of Chapter 598 litigation, he has no place of right at the

Chapter 232 table. His decision to marry [Khrista] prior to giving birth to a child he knew not to be his does not entitle him to the status of a necessary party by definition in a Chapter 232 case involving that child.

The order was filed in both the CINA proceeding and the termination proceeding. It is this order that Dan challenges on appeal.

II.

We begin our analysis by examining the scope of the juvenile court's order. First, of the two proceedings, Dan was a party only in the CINA proceeding and not a party in the termination proceeding. The two proceedings are separate and distinct. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("We refuse to equate the consequences of a CINA proceeding with those of parental termination."). For example, in a termination proceeding, while the court may judicially notice exhibits that are part of a related CINA proceeding, the exhibits are not automatically part of the termination record. *See In re J.L.W.*, 570 N.W.2d 778, 780 (Iowa Ct. App. 1997). Thus, our sole focus is on the order as it relates to the CINA proceeding. Second, Dan contends that the juvenile court lacked the authority to disestablish or overcome his paternity. *See* Iowa Code § 600B.41A (providing means for overcoming paternity of a man married to the mother at the time of the child's birth). Dan's argument misapprehends the juvenile court's holding. The juvenile court did not disestablish or overcome Dan's paternity. The juvenile court expressly recognized that Dan may continue to be J.C.'s legal father for other purposes. Instead, the juvenile court held Dan was only the "legal father" or "established father" and not the biological or adoptive father of J.C. and thus had "no place of right at the Chapter 232 table."

Thus, the question presented is not whether the juvenile court had the authority to disestablish paternity, the question presented is whether the "legal father" or "established father" of a child has the right to participate in a CINA proceeding involving the father's legal child. We conclude he does.

The terms "legal father" or "established father" have not been expressly defined by our legislature. In reviewing our statutes, however, it is clear the terms "refer[ ] to paternity which has been established by some means authorized by law." *Callender v. Skiles*, 591 N.W.2d 182, 185 (Iowa 1999). As relevant here, the law deems a person to be the "legal father" or "established father" of a child if the child is born in wedlock. *See id.*; Iowa Code §§ 144.13(2) ("If the mother was married at the time of conception [or] birth, . . . the name of the husband shall be entered on the certificate as the father of the child . . ."); 252A.3(4) ("A child or children born to parents who . . . have entered into a civil or religious marriage ceremony, shall be deemed the legitimate child or children of both parents."); 598.31 ("Children born to the parties, or to the wife, in a marriage relationship . . . shall be legitimate as to both parties."). It is not disputed Dan is the legal or established father of J.C.—the child was born during Khrista and Dan's marriage, and Dan was identified on the birth certificate as her father.

"The presumption of parentage is a fundamental legal construct originating in common law." *Gartner v. Iowa Dep't of Pub. Health*, 830 N.W.2d 335, 345 (Iowa 2013). Like many states across the nation, Iowa has codified the presumption of parentage to advance several key social policies. *See id.*

"Specifically, the presumption of parentage protect[s] the legitimacy of children, which in turn entitle[s] them to the financial support, inheritance rights, and filiation obligations of their parents." *Id.* The presumption of parentage further "thwart[s] the possibility that children [will] become wards of the state" and prevents a "third-party putative father from insinuating himself onto an intact family by claiming to have sired one of the family's children." *Id.* The presumption of parentage also protects the child in dissolution proceedings. Specifically, Iowa Code section 598.31 provides the child "shall be legitimate as to both parties." The presumption of parentage also ensures a child's right to financial support against a spouse's claim of not being the child's biological father. *See* Iowa Code § 252A.3(4) (providing child born of parents in a civil or religious ceremony shall be deemed the legitimate children of both parents); *Gartner*, 830 N.W.2d at 348. In sum, the established or legal father of a child is recognized to be the father of the child with concomitant rights and responsibilities until such time as the father is legally disestablished.

We now directly address the question of whether a legal father—who has all the rights and responsibilities associated with parentage—has the right to participate in a CINA proceeding involving his legal child. CINA proceedings are creatures of statute over which the juvenile court has exclusive jurisdiction. *See* Iowa Code § 232.61. A CINA proceeding is initiated by filing a petition alleging the child to be in need of assistance. *See id.* § 232.87. The petition must set forth the identity of the child, any living parent of the child, the guardian of the child, the legal custodian of the child, and the facts establishing the jurisdiction of

the court. *See id.* §§ 232.36 and 232.87(5) (incorporating requirements of section 232.36). Notice of the CINA petition must be provided to "known parents, guardians or legal custodians of a child." *Id.* §§ 232.37 and 232.88 (incorporating section 232.37). The code also provides that the child's parents, guardians, and legal custodians have the right to appear and be heard at all hearings or proceedings involving the child. *See id.* §§ 232.91(1) (providing "[a]ny hearings or proceedings under this division subsequent to the filing of a petition shall not take place without the presence of the child's parent, guardian, custodian, or guardian ad litem"); 232.91(3) (providing "[a]ny person who is entitled under section 232.88 to receive notice of a hearing concerning a child shall be given the opportunity to be heard in any other review or hearing involving the child"). The juvenile court concluded Dan was not entitled to participate in the CINA proceeding as a matter of right under any of these provisions because he is not a parent, guardian, or legal custodian of J.C. Dan challenges only the conclusion that he is not a "parent" within the meaning of the statute.[1]

The primary goal in interpreting a statute is to give effect to the legislature's intent as evidenced by the words used in the statute. *See Anderson v. State*, 801 N.W.2d 1, 3 (Iowa 2011). "When a statute is plain and its meaning clear, courts are not permitted to search for meaning beyond its express terms." *Id.* Chapter 232 provides that a child's parent shall have the right to notice and the right to appear and be heard. "Parent" is commonly understood to denote the

---

[1] The code also provides that a "person . . . may petition the court to be made a party to proceedings under this division." Iowa Code § 232.91(2). Dan did not petition to remain a party or otherwise rely on this provision in resisting the guardian ad litem's motion.

lawful father or mother of someone.  *See* Black's Law Dictionary 1137 (7th ed. 1999).  "In ordinary usage, the term denotes more than responsibility for conception and birth.  The term commonly includes the natural father or the natural mother of a child . . . ."  *Id.*  Under the plain meaning of the statute, Dan is a parent of J.C. and would be statutorily entitled to notice and the right to appear and be heard.[2]  In the typical case, this would end our inquiry.

Here, however, the legislature has acted as its own lexicographer and defined parent, in the context of chapter 232, to mean "a biological or adoptive mother or father of a child but [which] does not include a mother or father whose parental rights have been terminated."  Iowa Code § 232.2(39).  The legislature's definition of "parent" is narrower than the common understanding of the term.  Nonetheless, when the legislature defines its terms "we are normally bound by the legislature's own definitions."  *The Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 425 (Iowa 2010); *see Anderson*, 801 N.W.2d at 3 ("In the absence of legislative definition, we give words their ordinary meaning.").  This is true even when the legislature defines a term differently than its common understanding.  *See Sherwin-Williams*, 789 N.W.2d at 425 ("Under these circumstances, the common law and dictionary definitions which may not coincide with the legislative definition must yield to the language of the legislature.").  Therefore, we are "obligated to apply the statutory definition . . . as written, absent an ambiguity in that definition."  *Id.*

---

[2] We recognize that such rights are not absolute, but the scope of the right is not at issue and need not be addressed in this case

"A statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute. Ambiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes." *Id.* at 424-25. In addition, "when a literal interpretation of a statute results in absurd consequences that undermine the clear purpose of the statute, an ambiguity arises." *Id.* at 427 n.8. While a legal or established father may not fall within the literal statutory definition of "parent," we conclude that the literal interpretation is ambiguous, within the meaning of our case law, because it results in legally absurd consequences that undermine the clear purpose of the statute.

The purpose of chapter 232 is to protect and provide for the welfare of children in the State of Iowa. The legislature has instructed the judiciary to interpret and construe the statute liberally to the end that will best serve the interests of each child under the jurisdiction of the courts. *See* Iowa Code § 232.1 ("This chapter shall be liberally construed to the end that each child under the jurisdiction of the court shall receive, preferably in the child's own home, the care, guidance and control that will best serve the child's welfare and the best interest of the state.") Interpreting the word "parent" in such a way as to exclude the legal-but-not-biological father of a child from the operation of the statute directly contravenes this interpretive instruction because the literal interpretation renders chapter 232 wholly inapplicable to the conduct of legal-but-not-biological fathers qua fathers. This result undermines the ability of the State and the courts to protect and promote the welfare of children in this state.

For example, the code sets forth seventeen major circumstances in which a child can be adjudicated in need of assistance. *See* Iowa Code § 232.2(6)(a)-(q). Most of these circumstances relate to the action or inaction of parents, guardians, or custodians with respect to the child at issue. Under the literal interpretation of the statute adopted by the juvenile court, the State would not be able to seek to adjudicate a child in need of assistance where a legal-but-not-biological father not residing with the child sexually abused the child. *See* Iowa Code § 232.2(6)(d) (defining child in need of assistance to mean an unmarried child "who has been . . . sexually abused by the child's parent"). Nor—as is alleged in this case—could the State intervene to protect a child "[i]n whose body there is an illegal drug present as a direct and foreseeable consequence of the acts or omissions of the child's parent" if the parent was a legal-but-not-biological father of the child. *See* Iowa code § 232.2(6)(o). Similar examples abound. Removing the legal father from the operation of the statute creates a truck-sized regulatory hole in CINA proceedings.

By way of another example, the literal interpretation also impairs the State's ability to prevent and remedy child abuse. The code provides that "[c]hildren in this state are in urgent need of protection from abuse." Iowa Code § 232.67. One of the purposes of chapter 232 is "to provide the greatest possible protection to victims or potential victims of abuse." *Id.* Iowa Code section 232.68(2) defines child abuse as that perpetrated by a person "responsible for the care of a child." *Id.* § 232.68. The code further defines "[p]erson responsible for the care of a child" as, among other things, a "parent, guardian, or foster

parent." *Id.* § 232.68(7). Absent some other jurisdictional hook, the literal interpretation of "parent" thus removes the conduct of the legal-but-not-biological father of the child from the operation of the statute. Further, the literal interpretation would not provide IDHS with authority to respond to a report of abuse when committed by a legal-but-not-biological father. *See id.* § 232.71B (providing that when the department receives a report that "constitutes a child abuse allegation, the department shall promptly commence either a child abuse assessment within twenty-four hours of receiving the report or a family assessment within seventy-two hours of receiving the report"). The literal interpretation would also mean that mandatory reporters would not be required to report abuse by the legal-but-not-biological father of a child who does not reside with the child. *See id.* § 232.69. The juvenile court's interpretation would also preclude a legal father from being listed on the child abuse registry. See *id.* § 232.71D (providing the name of the child and alleged perpetrator shall be placed on the registry if the department determines the conduct meets the definition of "child abuse").

The exclusion of the legal father from the definition of "parent" also precludes the timely and efficient resolution of a child's legal status. The literal interpretation renders the division of chapter 232 governing the termination of parental rights wholly inapplicable to the legal-but-not-biological father of a child. *See id.* § 232.109 ("The juvenile court shall have exclusive jurisdiction over proceedings under this chapter to terminate a parent-child relationship and all parental rights with respect to a child."). Under the literal interpretation of

"parent," there is no relationship between a legal father and child that the juvenile court has authority under chapter 232 to terminate. The child's legal status vis-à-vis the legal-but-not-biological father would remain in limbo. The juvenile court recognized as much, concluding that Dan was not a "parent" for the purposes of chapter 232 but would still have rights under chapter 598. How can this child be placed or adopted, if it ever came to that, where the child still has a legal father with potential custody and visitation rights unresolved? Avoidance of this untenable result appears to explain why juvenile courts in this state have implicitly concluded that a legal-but-not-biological father is a parent within the meaning of chapter 232 whose parental rights can and should be terminated in a chapter 232 proceeding in addition to the biological father's parental rights. *See, e.g.*, *In re K.C.B. Jr.*, No 13-0615 2013 WL 3287240 at *1 n.1 (Iowa Ct. App. June 26, 2013) (terminating parental rights of both biological and legal father); *In re T.C.*, No. 13-0679 2013 WL 3279995, at *1 n.1 (Iowa Ct. App. June 26, 2013) (same); *In re K.N.*, No. 12-1805, 2013 WL 100119, at *1 (Iowa Ct. App. Jan. 9, 2013) (same); *In re S.W.*, No. 11-0710, 2011 WL 3115841, at *1 n.1 (Iowa Ct. App. July 27, 2011) (same); *In re N.S.*, No. 07-1965 2008 WL 239548 at *1 n.1 (Iowa Ct. App. Jan. 30, 2008) (same).

The implicit conclusion that an established father has rights under chapter 232 has been explicitly confirmed by our court. In *In re K.D.*, No. 00-732, 2001 WL 194856, at *1 (Iowa Ct. App. Feb. 28, 2001), the juvenile court disallowed the established father visitation with the child at issue based on his status as only the legal or established father and not the biological father. Our court concluded that

the legal father had the right to participate in the proceedings and request visitation in a CINA proceeding until such time as he was disestablished. *See id.*, at *1 ("The record before us on appeal does not indicate [the biological father] has filed an action to overcome paternity pursuant to Iowa Code section 600B.41A(3). Therefore, [the legal father] still has the legal standing to request visitation with [the child].").  This conclusion makes particular sense where, as here, the legal father is engaged in concurrent litigation under chapter 598.  As the juvenile court noted, Dan's chapter 598 proceedings were stayed upon the filing of the CINA petition.  As the juvenile court also noted, it did not grant concurrent jurisdiction in this case.  By concluding that Dan has no right to participate in the CINA proceeding, the juvenile court is effectively resolving the chapter 598 custody and visitation issues without affording Dan an opportunity to appear or be heard.  That result also appears untenable.

In concluding that Dan is a "parent" within the meaning of chapter 232, and entitled to notice, the opportunity to appear, and to be heard in the CINA proceeding involving J.C.,

> we are mindful of the cautionary advice of one commentator that the absurd results doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said.

*Anderson*, 801 N.W.2d at 7.  This case, however, is not a case in which we have ignored legislative language because it is contrary to the court's expectations. Instead, we have heeded another statutorily-imposed directive to interpret and

construe the statute liberally to achieve the purpose of the statute—to protect the welfare of children in the State of Iowa.

## III.

We hold the established or legal father of a child is a parent within the meaning of Iowa Code section 232.2(39) and is entitled to participate in a CINA proceeding involving the father's legal child to the same extent as a biological or adoptive father. We reach that conclusion because we are statutorily compelled to construe chapter 232 liberally to protect the welfare of children in this state and because a contrary conclusion is inconsistent with the purposes of the statutory scheme. Further, the contrary conclusion is not consistent with the practice and procedure of juvenile courts throughout the State of Iowa. Accordingly, the judgment of the district court is reversed and this case is remanded for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**